IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

SAM McCOY,

    *Plaintiff,*

vs.

OKMULGEE COUNTY BOARD OF COMMISSIONERS, and the OKMULGEE COUNTY CRIMINAL JUSTICE AUTHORITY,

    *Defendants.*

Case No. 21-333-EFM

**MEMORANDUM AND ORDER**

In this Title VII employment action, Plaintiff Sam McCoy alleges that he was fired from his job at the Okmulgee County Jail in retaliation for his testimony against other jail officers, and his report of misconduct by an Okmulgee police officer. He originally brought the present action in Oklahoma state court against the Okmulgee Jail Trust, and subsequently added two additional Okmulgee County entities: the Board of County Commissioners, and the Criminal Justice Authority. After the action was removed to this Court, Plaintiff dismissed his claims against the Jail Trust Authority. The Board and the Criminal Justice Authority have separately moved to dismiss the action against them. (Docs. 7, 11).

I.      **Factual and Procedural Background**

Plaintiff brought his action against the Jail Trust on April 7, 2021 in the District Court of Okmulgee County. On August 19, 2021, he filed an Amended Petition naming the Board and the Justice Authority as Defendants. On November 8, 2021, Defendants removed the action to this Court. For purposes of resolving the present motion, the Court accepts as true the factual allegations made in Plaintiff's Amended Petition.

Plaintiff worked for the Justice Authority for 19 years, and was never subject to any disciplinary actions.

At some unspecified date, Plaintiff was deposed in a civil rights action brought by an inmate, and testified that he believed the jail guards involved in the incident should be arrested and prosecuted.

Later, in early 2020, Plaintiff alleges that he "became aware" of an attack on a handcuffed inmate by an Okmulgee police officer. At the time, the white officer was transporting the black inmate to the jail. The language of the Amended Petition suggests that Plaintiff learned of the assault indirectly.

Plaintiff reported the incident to Okmulgee District Attorney Carol Iski, but Iski refused to file charges against the police officer. Instead, Iski contacted the Police Chief, Joe Prentis, who in turn called Plaintiff to say he should mind his own business.

Before this report, Plaintiff had enjoyed a good working relationship with the Board, Criminal Justice Authority members, and local law enforcement agencies. Afterwards, the Board and the Criminal Justice Authority "began a targeted series of attacks on Plaintiff, culminating in his initial suspension and ultimate termination on or about July 23, 2020."

Plaintiff further alleges that the Criminal Justice Authority refused to sign his retirement

paperwork. Plaintiff states that the delay was intended "to starve him out." In addition, the Justice Authority refused to acknowledge his vacation pay, which has cost him "thousands of dollars in retirement income."

Aside from an additional demand for punitive damages, the only claim for relief in Plaintiff's Amended Petition is contained Paragraph 24, which alleges that "[t]o this day, Plaintiff has not received an official notice of why his almost twenty-career with the [Justice Authority] was abruptly ended. These acts were purely retaliatory, and Defendant [sic] has violated Title VII of the Civil Rights Act of 1964."

## II.     Legal Standard

Under Rule 12(b)(6), a defendant may move for dismissal of any claim for which the plaintiff has failed to state a claim upon which relief can be granted.[1] Upon such motion, the court must decide "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.' "[2] A claim is facially plausible if the plaintiff pleads facts sufficient for the court to reasonably infer that the defendant is liable for the alleged misconduct.[3] The plausibility standard reflects the requirement in Rule 8 that pleadings provide defendants with fair notice of the nature of claims as well the grounds on which each claim rests.[4] Under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint, but need not afford

---

[1] Fed. R. Civ. P. 12(b)(6).

[2] *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[3] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

[4] *See Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) (citations omitted); *see also* Fed. R. Civ. P. 8(a)(2).

such a presumption to legal conclusions.[5]  Viewing the complaint in this manner, the court must decide whether the plaintiff's allegations give rise to more than speculative possibilities.[6]  If the allegations in the complaint are "so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.' "[7]

### III.  Analysis

Defendants present several arguments in favor of dismissal of the action.  The Justice Authority argues that Plaintiff has failed to state a claim for relief because the petition lacks important elements of a Title VII retaliation claim.  In particular, it argues the Amended Petition is deficient because there is no allegation that the Justice Authority was aware of the report to Iski, and in any event the six month gap between the report and the termination is too great to create any inference of retaliation.

A plaintiff presenting a claim of retaliation under Title VII must establish three prima facie elements to proceed: "(1) he or she engaged in a protected activity, (2) he or she suffered a material adverse action, and (3) there was a causal connection between the protected activity and the adverse action."[8]  Plaintiff's burden at the prima facie stage is "not onerous."[9]

---

[5] *Iqbal*, 556 U.S. at 678-79.

[6] *See id.* ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." (citation omitted)).

[7] *Robbins*, 519 F.3d at 1247 (quoting *Twombly*, 550 U.S. at 570).

[8] *Thomas v. Berry Plastics Corp.*, 803 F.3d 510, 514 (10th Cir. 2015).

[9] *Orr v. City of Albuquerque*, 417 F.3d 1144, 1149 (10th Cir. 2005) (quotation and citation omitted).

As to the third element, "the closer [a termination] occurred to the protected activity, the more likely it will support a showing of causation."[10] "Unless the termination is *very closely* connected in time to the protected activity, the plaintiff must rely on additional evidence beyond mere temporal proximity to establish causation."[11] The Tenth Circuit has held that an adverse employment action approximately a month and a half after protected conduct can be sufficient to give an inference of causation.[12] On the other hand, a three month period, by itself, is insufficient to give rise to such an inference.[13]

Because there was a delay of some six months between Plaintiff's report to Iski and his termination, the Justice Authority argues that Plaintiff cannot show any retaliatory motive. As Plaintiff correctly observes, the cases cited by Defendant all involve decisions at summary judgment, holding that a delay of three months or more is insufficient to prove a causal connections between the protected conduct and an adverse employment action.

" '[T]emporal proximity' is merely one factor relevant to causation and usually only later in the proceedings, for example at summary judgment."[14] Thus, for purposes of determining whether there is a sufficient basis for inferring retaliatory intent, courts have repeatedly recognized that motions to dismiss are fundamentally different from summary judgment

---

[10] *Anderson v. Coors Brewing Co*., 181 F.3d 1171, 1179 (10th Cir. 1999).

[11] *Id*. (citation omitted, emphasis in original).

[12] *Ramirez v. Oklahoma Dpe't. of Mental Health*, 41 F.3d 584, 596 (10th Cir.1994) (one and one-half month delay sufficient to establish causation), *overruled on other grounds by Ellis v. University of Kan. Med. Ctr.*, 163 F.3d 1186, 1194-1197 (10th Cir.1998). *See also Meiner v. Univ. of Kan.*, 359 F.3d 1222, 1231 (10th Cir. 2004).

[13] *Richmond v. ONEOK, Inc*., 120 F.3d 205, 209 (10th Cir. 1997).

[14] *Garayalde-Rijos v. Mun. of Carolina*, 747 F.3d 15, 25 (1st Cir. 2014).

motions.[15]  The six month delay between the Iski report and his termination will be fatal to Plaintiff's claim *if* after discover he can produce no evidence showing a retaliatory motive on the part of the Justice Authority.

The same holds true for the Justice Authority's argument that it cannot be held liable for Plaintiff's termination, as it was unaware of the Iski report.  This is a factual argument not appropriate for resolution by a motion to dismiss.  In the Amended Petition, Plaintiff alleges that he had a good relationship with the Justice Authority until the Iski report.  He also alleges that despite working at the jail for almost 20 years, the Justice Authority has never explained his termination.  He further asserts, in his response to the Motion to Dismiss, that Iski had strong influence or control over the Justice Authority.  Given these allegations, the Court cannot say at this stage that Plaintiff's claims of retaliation are so implausible as to require dismissal.

Defendants are on firmer ground in arguing that Plaintiff's claims simply do not advance a viable retaliation claim under Title VII, the only cause of action presented in the Amended Petition.  The statute provides:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice *made an unlawful employment practice by this subchapter*, or because he has made a charge, testified, assisted, or participated in any manner *in an investigation, proceeding, or hearing under this subchapter*.[16]

---

[15] *Woods v. Venegone*, 1993 WL 262003, at *3 (7th Cir. 1993) ("While Mr. Woods' claim of retaliation [six months after a prior lawsuit] could survive a motion to dismiss, it cannot withstand a motion for summary judgment."); *Joseph v. Owens & Minor Distrib., Inc.,* 5 F. Supp. 3d 295, 318-19 (E.D.N.Y. 2014) ("[T]emporal proximity alone is insufficient to carry a plaintiff's *ultimate* burden to prove his case of retaliation.") (emphasis in original); *Walters v. MedBest Med. Mgmt., Inc.*, 2015 WL 860759, at *9 (N.D.N.Y. 2015) (distinguishing cases cited by defendant, which "addressed motions for summary judgment, where discovery had been conducted and the courts could weigh relevant circumstances along with the temporal proximity").

[16] 42 U.S.C. § 2000e-3(a) (emphasis added).

As noted earlier, a prima facie retaliation case under Title VII requires as an element a showing that the Plaintiff "engaged in protected opposition to discrimination."[17] The protected activity must be "activity protected *under Title VII*."[18] That is, in the words of the statute, the activity must take the form of either "oppos[ition to] any practice made an unlawful employment practice under this subchapter [Title VII]," or "a charge, testi[mony], assist[ance], or participat[ion] in any manner in an investigation, proceeding, or hearing under this subchapter."[19]

"Title VII is not a 'bad acts' statute."[20] It prohibits discrimination in employment, and retaliation for opposition to workplace discrimination. "A complaint about an employment situation that is unrelated to the protections afforded by Title VII is not a protected activity."[21] Thus, Title VII is not violated when an employer retaliates against an employee who makes complaints "concerning various regulatory and health-related issues" in the workplace, as such conduct "is unrelated to any employment practice made unlawful by Title VII."[22] Similarly, as the Tenth Circuit recently observed, "Title VII does not protect against adverse employment decisions based on an employee's exercise of his right to free speech."[23]

---

[17] *Somoza v. Univ. of Denver*, 513 F.3d 1206, 1212 (10th Cir. 2008) (quotation and citation omitted).

[18] *Robinson v. Barrett*, 823 F. App'x 606, 610 (10th Cir. 2020) (emphasis added).

[19] 42 U.S.C. § 2000e-3(a).

[20] *Holder v. City of Raleigh*, 867 F.2d 823, 828 (4th Cir.1989) (citation omitted).

[21] *Alim v. KBR, Inc.,* 2013 WL 12084291, at *8 (N.D. Tex. 2013).

[22] *Jaggon v. Cmty. Health Servs., Inc*., 2019 WL 4414953, at *9 (D. Con.. 2019) (quoting and emphasizing that § 2000e-3(a) requires opposition to practices "made an unlawful practice *by this subchapter*," or activity in connection with "an investigation, proceeding, or hearing *under this subchapter*").

[23] *Tracy v. Vail Resorts, Inc*., 2022 WL 16557393, at *4 (10th Cir. 2022).

Inmates held under confinement are not "employees" within the meaning of Title VII.[24] Even assuming that Okmulgee jail officers did violate the constitutional rights of the two inmates as alleged in the Amended Petition, those rights are not employment rights created by Title VII. Neither incident involved any charge of an unlawful employment practice at the jail, and there was no Title VII investigation or proceeding.

The Court finds that the Amended Complaint fails to present a prima facie claim of retaliatory discharge under Title VII, and will grant the Motions to Dismiss.

**IT IS THEREFORE ORDERED** that Defendants' Motions to Dimiss (Docs. 7 and 11) are hereby **GRANTED**.

**IT IS SO ORDERED**.

Dated this 9th day of December, 2022.

This closes the case.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE

---

[24] *See Addison v. Cal. Inst. for Men*, 2016 WL 8732476, at *8 (C.D. Cal. 2016) (citing cases).